Charlie **HOOTEN** et al., Appellants,

v.

James **DUNBAR**, Appellee.

No. 6404.

Court of Civil Appeals of Texas.

Beaumont.

May 25, 1961.

Rehearing Denied June 28, 1961.

Dyess, Dyess, Prewett & Cantey, Houston, for appellants.

McClain & Harrell, Conroe, for appellee.

McNEILL, Justice.

Appellee James Dunbar sued appellants Charlie Hooten and Charlotte Ann Daniel in the District Court of Montgomery County on account of injuries sustained by him resulting from a collision between a Chevrolet car appellee was driving and a Ford car owned by appellant Hooten and driven by the other appellant, which took place on State Highway 75 between the towns of Conroe and Willis. Appellee's petition alleged, among other grounds of negligence, that appellee was proceeding in his right lane south on the highway at the time and the driver of the other car, proceeding north, came across the center line of the road and into appellee's lane so that the left front of the Ford car struck the left side of his car, causing his Chevrolet to sustain a sideswiping blow to its left side from front to back. Appellants filed answer

and cross action, asserting that the Ford car was being operated at the time southwardly on the highway in its proper lane and that the Chevrolet driven by appellee was proceeding northward and swung across the center line, striking the front end of the Ford bashing it in and causing the Chevrolet to be sideswiped in the manner indicated.

Several eyewitnesses on each side testified sustaining or tending to sustain the party whose witness they were. In rebuttal appellee, as plaintiff below, placed Dr. W. H. Tonn, an expert on analysis of collisions, fires and explosions, on the stand to testify as to the directions in which the two cars were traveling just before the accident involved. The record reflects that he is a recognized expert in the field involved. Upon trial to a jury, it found that appellant Charlotte Ann Daniel was just before the collision traveling north on said highway, crossed the center of the highway into the west lane of the highway and into the path of appellee's automobile; that this was negligence and a proximate cause of the collision. Upon this verdict judgment was rendered for appellee against appellants for the damages sustained by him, and this appeal has resulted.

Appellants' sole point is that the trial court erred in permitting appellee's witness Dr. Tonn to express his opinion as to the directions in which the two cars were traveling immediately before the collision. In the preliminary questioning by appellee's attorney, Tonn testified that the basis of making a collision analysis is applying the basic sciences of physics, mathematics, chemistry, civil engineering and other related sciences as they may apply to a given set of circumstances; that while he had not made an examination of the area in which the Chevrolet and Ford collided, he was acquainted with the section of the road, and he had been submitted for examination a series of pictures in evidence by appellee showing the position of the cars after they came to rest from the collision and showing the amount and type of damage to each car involved. After being further told that one of the cars was going south and the other north on the highway, and that the one going north came across the center line and collided with the other car he was told to assume that the vehicles came together at approximately this (indicating) angle. The diagram he was testifying from is not in evidence and we do not know the angle involved. After this predicate of facts was given to Dr. Tonn, counsel for appellee then asked him this question which he answered as follows:

"Q. Now, Doctor, from those facts that I have told you, assuming that they are correct, from the position of those cars after the accident, from the damage to the cars as shown by those pictures there, I want to ask you whether or not in your field of engineering you can give me an opinion as to which of these cars was going north before the accident and which was going south. Can you give me an opinion on that? A. Yes, sir."

Appellants at this point made the following objection:

"Mr. Dyess: Your Honor, I object to any question calling for an expression of an opinion as being an invasion of the province of the jury. This is not a case where we don't have an eye witness, and this is clearly a case where expert testimony could not be admitted to contradict or explain away what eye witnesses themselves say. We don't have a case here where every body was killed and nobody saw it. We have a case here where eye witnesses came in and testified, and we object to it as being an invasion of the province of the Jury. The direction they were traveling beforehand is a big question in this lawsuit. I don't believe an expert should be permitted to testify on such a matter when we have eye witnesses who have come here and testified."

The court overruled this objection and thereupon appellee's attorney asked the witness:

"Q. (Mr. Harrell, continuing) : Well, let's go into this a bit. What principles of engineering do you apply in arriving at a conclusion, an opinion? A. It is simply analyzing the direction in which the force had to be applied from each vehicle for the damage suffered as shown in the photographs. It is a question of the direction of the force applied and the damage suffered by the cars."

The Doctor was asked what sort of damage each photograph revealed the different vehicles sustained. He stated that the damage to the Chevrolet was from a blow applied to the side and not to the front. He was shown pictures of the Ford and he testified the left front end of the Ford was bashed in, indicating a head-on impact, while the damage to the Chevrolet was sideswiping. He was then asked the question which received the answer following:

"Q. All right, sir: Doctor, I want to ask you this: Assuming that these vehicles—that (indicating) is facing south. This (indicating) is coming north. Assuming this Chevrolet was going north and cut across into that south-bound traffic lane at this (indicating) angle, and the vehicles went like this (indicating), or whether it was like (indicating) this or back further, could that collision have occurred with the Chevrolet coming over there at that angle without there being a contact brought to some front part of that Chevrolet? A. It is physically impossible."

Then ensued the further question and answer:

"Q. Let's put them back like this (demonstrating). Assuming again that the Chevrolet was going north at about that angle (indicating) and the Ford was going south at that (indicating) angle, as drawn on that diagram—we're using Plaintiff's Exhibit No. 26 which was introduced into evidence at the time Mr. Woodward was testifying. Assuming that the Chevrolet was traveling north and the Ford was traveling south and they came together in approximately that (indicating) position and at that angle, can you tell the Jury how they could come together with that Chevrolet coming across on that Ford and that Ford suffer damage to the front and not to the side there (indicating)? A. It is impossible, sir."

There was no separate or additional objection to either of these last two questions nor in fact to any other question asked by appellee, although examination of the witness calling for his opinions continued, and then considerable cross-examination of the witness took place. But at the end of the cross-examination, counsel for appellants moved that the testimony of Dr. Tonn be excluded from the record "for the reasons heretofore given," which was denied.

■ Appellants' point is without merit. In the first place the general objection to "any questions" which may be asked the witness calling for an expression of an opinion is ineffectual. 3a Tex.Jur. 210; 4 C.J.S. Appeal and Error § 247, p. 766. But assuming that a party may so object without the court's sanction before questions are propounded, let us examine the reasons stated in appellants' objection. We think there were two: (1) Since there were eyewitnesses, expert opinion of accident cause is inadmissible. This is not a good objection. (2) Because "any question" would call for an opinion of this witness and would be an invasion of the province of the jury. The basis upon which the objection is briefed in this court by appellants is that this expert witness failed to show superior knowledge, skill or experience in connection with the facts of the collision over and above the common

experience and understanding of the jury. Does the objection that the testimony of an expert witness invades the province of the jury as presented in the trial court raise the point so briefed? A party must stand or fall on the objection as made in the trial court. Rulings on admissibility of evidence are made promptly by the trial court; this is necessary in order to reasonably expedite the trial. An objection to evidence should be so clear and specific that the Judge may immediately understand the point raised. An objection using an expression which may mean one or more of several specific complaints is usually too general to call the court's attention to the point the objector may have in mind. So we think was the effect of the objection that the witness's testimony would "invade the province of the jury." Moore v. Knemeyer, Tex.Civ.App., 271 S.W. 653. The pleadings of both appellee and appellants alleged that the opponent's car was going north and crossed the center line. The direction the cars were traveling was therefore a vigorously contested issue, and was an ultimate one submitted to the jury. A very common use of the objection the evidence offered "invades the province of the jury" is that the evidence is upon the direct point the jury is to decide. McCormick and Ray, Texas Evidence, Sec. 1395, Vol. 2, p. 219.

■ This use or meaning of the objection in the court below could well have been in the judge's mind when he overruled it; and because of the ambiguous phrase used he was so entitled to consider it. Sternenberg v. Marshall, Tex.Civ.App., 257 S.W.2d 312(15); 3a Tex.Jur. 210–212. An expert may give his opinion on the ultimate issue. Adamson v. Burgle, Tex.Civ. App., 186 S.W.2d 388. Exceptions to this rule are where the ultimate issue is a conclusion of law as in Phoenix Assurance Co. v. Stobaugh, 127 Tex. 308, 94 S.W.2d 428, or where it is a mixed question of law and fact as in Houston & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808. The use of the phrase, to "invade the prov-

ince of the jury", in objecting to evidence is criticized in McCormick and Ray, Evidence, Vol. 2, Sec. 1395, pgs. 219–223. There it is said: "The phrase is unfortunate and tends to lead to confusion. The witness is not attempting to usurp the function of court or jury and could not do so if he desired. The real reason for such exclusion is simply that the opinions are superfluous in the sense that the court and jury can decide such matters without aid from the witness." Appellants' objection failed to reach this point.

Since no proper objection was made to the witness's testimony as it was elicited, it is not necessary to pass upon its admissibility.

The judgment below is affirmed.