UNITED WAY OF SAN ANTONIO,
INC., Appellant,

v.

HELPING HANDS LIFELINE
FOUNDATION, INC.,
Appellee.

No. 04–95–00756–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 15, 1997.

Opinion Granting Rehearing
in Part Feb. 26, 1997.

Rehearing Overruled June 30, 1997.

Opinion Dissenting from Denial of
Rehearing En Banc June 30, 1997.

Ryan G. Anderson, William H. Ford, Grant T. McFarland, Ball & Weed, P.C., San Antonio, for Appellant.

Carl Pipoly, Law Offices of Carl Pipoly, San Antonio, for Appellee.

Before RICKHOFF, STONE, and ANTONIO G. CANTU [1], JJ.

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 75.003 (Vernon Supp.1997).

## ON APPELLANT'S MOTION
## FOR REHEARING

RICKHOFF, Justice.

Appellant's motion for rehearing is granted in part. Our opinion and judgment of September 25, 1996 are withdrawn, and this opinion and judgment are substituted. We granted the motion for rehearing in part to modify and clarify our holding regarding Helping Hands' breach of contract claim and to correct our references to Helping Hands' second claim as defamation, rather than business disparagement.

United Way of San Antonio and Bexar County, Inc. ("United Way") appeals following a jury verdict awarding Helping Hands Lifeline Foundation, Inc. ("Helping Hands") $116,885.00 for breach of a contract. As to Helping Hands' breach of contract claim, we reverse and render; as to its business disparagement claim, we reverse and remand.

### FACTS

Helping Hands became an affiliated United Way agency in May of 1989 and received funding for fiscal year 1990. In the process of applying for affiliation, Helping Hands was required to execute a contract with United Way consisting of two documents: a statement of agreement and a policies and procedures manual. The contract required Helping Hands to deliver effective human services programs to the community, advertise its relationship with United Way and assist United Way in its annual campaign for community funds. In return, United Way was required to allocate to Helping Hands a share of the approximately $25 million in proceeds raised from its annual campaign. The contract was to continue until either United Way terminated funding for good cause or Helping Hands voluntarily discontinued affiliation.

During the initial funding period, United Way expressed concerns about Helping Hands' provision of services and internal operations and recommended that Helping Hands: (1) expand its governing board in terms of both number of directors and experience; (2) improve its tracking of clients; (3) develop a long range plan for expanding its operations as funding increased; and (4) develop a paid professional staff to work with its existing all-volunteer staff. United Way was concerned that the complete reliance on volunteers for staffing could lead to problems in continuity of services as a result of turnover and that the governing board was not sufficiently independent to provide objective supervision.

Following Helping Hands' application for funds for fiscal year 1991, United Way once again reiterated its concerns and further advised that Helping Hands needed to: (1) improve its tracking of in-kind donations; (2) clearly define its mission; and (3) focus its energies rather than trying to serve all in need. United Way warned that the failure to develop a plan for the necessary transition from an all-volunteer agency to a professional organization could adversely affect future funding. Helping Hands responded that it intended to convert to a professional organization by paying staff, but that it considered its board and system of tracking donations sufficient for its needs.

In December of 1990, Helping Hands submitted its funding request for fiscal year 1992. United Way agreed to fund Helping Hands but placed it on probation with a warning that a failure to comply with the probationary conditions set forth in the funding notification would result in termination of funding. United Way's review panel also recommended a meeting to review the progress on the panel's recommendations and held $3,225.00 of Helping Hands' funding in escrow pending such review.

Following a November 1991 meeting, United Way advised Helping Hands that its progress was unsatisfactory and the $3,225.00 in escrow would be forfeited pursuant to the contract. United Way also warned that future funding was in jeopardy for Helping Hands' failure to respond to United Way's concerns. After a January 14, 1992 meeting, United Way concluded Helping Hands failed to make adequate progress, and on January 21, 1992, United Way's executive committee voted to defund and disaffiliate Helping Hands retroactive to January 1, 1992. United Way was then holding $11,885.00 in allocated but undistributed funds for fiscal year

1992. These funds were retained by United Way.

Helping Hands sued United Way and one of its employees, Dick Brown ("Brown"), for breach of the contract and business disparagement based upon alleged statements made by Brown. The jury awarded Helpings Hands $116,885.00 in damages for breach of contract but refused to find in its favor as to the business disparagement claim. The trial court reduced the contractual damage award by $35,000.00 and entered judgment against United Way for $81,885.00.

United Way concedes that there is sufficient evidence of breach; however, United Way contends the damage award was erroneous.

United Way's first two points of error assert that the trial court erred in rendering judgment that Helping Hands recover $81,885.00 for damages resulting from United Way's breach of the contract because: (1) $11,885.00 is the maximum amount recoverable under Texas law; and (2) there was no evidence or, alternatively, insufficient evidence to support any award in excess of $11,885.00. United Way's third point of error asserts the trial court erred in admitting, over objection, the testimony of Helping Hands' accountant, David Ludwig (Ludwig), because his testimony was speculative and at variance with his pretrial deposition testimony.

In two cross points, Helping Hands asserts that the trial court erred (1) in reducing the jury award of $116,885.00 by $35,000.00 and entering judgment for $81,885.00 because there is sufficient evidence to support the jury's answer of $116,885.00;[2] and (2) in admitting expert testimony on a question of law relating to its business disparagement claim.

Because Helping Hands' first cross point is interrelated with United Way's points of error, we will address them jointly.

**2.** The trial court ordered the remittitur without conditioning it on a new trial. Nevertheless, the standard of review remains the same. We conduct a factual sufficiency review and examine all

## STANDARDS OF REVIEW

In reviewing "no evidence" points, the reviewing court considers only the evidence and inferences that tend to support the finding and disregards all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986).

In reviewing a "matter of law" challenge, the reviewing court employs a two-prong test. The court will first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

In reviewing an insufficient evidence challenge, the reviewing court must first consider, weigh, and examine all of the evidence that supports and that is contrary to the jury finding. The reviewing court may set aside the verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

Admitting and excluding evidence are matters within the discretion of the trial court. To obtain a reversal of a judgment based on the erroneous admission of evidence, an appellant must show that, in light of the entire record, the trial court's ruling was in error and that the error was calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992).

of the evidence to determine if there is sufficient evidence to support the damage award. *Horton v. Robinson*, 776 S.W.2d 260, 268 (Tex.App.—El Paso 1989, no writ).

## CONTRACTUAL DAMAGE AWARD

■ United Way argues that if it had not terminated the contract, Helping Hands would have received, at most, the $11,885.00 in funds that had been allocated to it for fiscal year 1992 but remained undisbursed at the time of the defunding. Moreover, United Way insists that Helping Hands could not show that it would have received funding beyond fiscal year 1992 because funding allocation occurred on an annual basis and nothing indicated that Helping Hands would be entitled to automatically receive funding each year.

Under the terms of the contract between United Way and Helping Hands, United Way agreed to provide financial support as determined by United Way through an annual allocations process. Although affiliated agencies generally were required to reapply each year for continued funding, an agency desiring allocation of funding for a period greater than one year could apply for multi-year funding provided it met additional requirements. Helping Hands never applied for multi-year funding. Furthermore, Helping Hands admitted that the United Way funding had to be renewed each year, that funding was entirely within United Way's discretion, and that there were no guarantees it would receive funding each year. Therefore, the burden was on Helping Hands to establish that it would receive funding beyond fiscal year 1992 to support the jury finding for that period. The only evidence offered by Helping Hands to meet this burden was the testimony of Ludwig, its accountant.

Prior to Ludwig testifying, United Way's attorney voir dired him regarding the bases for his opinions. Ludwig admitted giving deposition testimony on damages and lost future funding based upon possibility rather than upon reasonable probability. Ludwig admitted his testimony would now be based upon reasonable probability and further admitted that he had not supplemented his prior opinion. The trial court refused to exclude his testimony in the face of objections.

Ludwig was permitted to give his opinion on damages which he candidly admitted was based on pure speculation that Helping Hands would have received funding for the next 10 to 20 years. Ludwig further testified that he had no firsthand knowledge of any public funding lost by Helping Hands as a result of the defunding. His conclusion that such a loss would occur was solely based upon his belief that the general public would have heard bad things about Helping Hands following defunding and would be inclined not to donate. Ludwig admitted that he could not say with any degree of certainty that any lost funding was permanent.

Moreover, his calculations of lost funding were based upon the historical receipt of $35,000.00 for each previous year from United Way and an approximate loss of general public funds or donations in the amount of $14,000.00 for each year for a total loss of $49,000.00 annually. Therefore, Ludwig's loss of funding calculations were based upon the simple fact that funding was not received for a period of three years, that is, from date of defunding up to the date of trial, and from the fact that it had received that amount in previous years. Ludwig admitted that the only funding that he could identify with any degree of certainty as lost due to defunding by United Way was the remainder of the 1992 fiscal year allocation in the amount of $11,885.00.

■ In order to recover lost fundings [an expectation], we have reviewed cases involving proof of lost profits by for-profit entities. In that context, a party must produce sufficient evidence to enable the fact finder to determine the net amount of the loss with reasonable certainty. *See Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 496 (Tex.App.—Houston [1st Dist.] 1992, writ denied)(lost profits). The evidence relative to the funds [expectation] must not be uncertain or speculative, *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 426, 115 S.W.2d 1097, 1098 (1938)(lost profits); however, it is not necessary that the lost funds be subject to exact calculation. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983).

■ Opinion testimony that is based on speculation or conjecture lacks probative value. *Naegeli Transp. v. Gulf Electroquip,*

*Inc.*, 853 S.W.2d 737, 741 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Ochs v. Martinez*, 789 S.W.2d 949, 958 (Tex.App.—San Antonio 1990, writ denied); *UMC, Inc. v. Coonrod Elec. Co.*, 667 S.W.2d 549, 559 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Golleher v. Herrera*, 651 S.W.2d 329, 334 (Tex.App.—Amarillo 1983, no writ); *Flores v. Missouri–Kansas–Texas R.R. Co.*, 365 S.W.2d 379, 382–83 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Therefore, nonprobative testimony constitutes "no evidence." *See Schaefer v. Texas Emp. Ins. Ass'n*, 612 S.W.2d 199, 204–05 (Tex.1980).

■ Just as the "mere hope for success of an untried enterprise" will not support recovery of lost profits, *Texas Instruments, Inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 280 (Tex.1994), the mere hope for funding renewable at the discretion of another party will not support recovery of any future funds the other party could withhold at its discretion. Helping Hands' expectations of renewal of funding in light of United Way's prior warnings were at best hopeful; "in reality, they were little more than wishful." *Id.*

We agree that the only part of the jury's findings on damages with support in the record is that part regarding the balance of $11,885.00, representing the remaining allocation for fiscal year 1992. Because $11,-885.00 is the maximum amount of damages recoverable as a matter of law in light of the discretion given United Way under the terms of the funding agreement, we sustain United Way's first point of error and overrule Helping Hands' cross point number one. We do not address United Way's second point of error because it does not challenge the sufficiency of the evidence to support the $11,-885.00 damage award, and, therefore, is not

necessary to the rendition of the judgment in this case.[3] We also do not address United Way's third point of error alleging error on the part of the trial court in failing to strike Ludwig's testimony because even if its admission was erroneous, we have found the testimony complained of to be non-probative; therefore, its admission would be harmless and not constitute error requiring reversal.[4]

## OPINION TESTIMONY REGARDING DISPARAGING STATEMENT

■ Helping Hands' cross point number two alleges trial court error in permitting a law professor to testify on whether certain language was disparaging because this question is exclusively one for the trial court and not a proper subject for expert testimony.

Prior to United Way calling Barbara Aldave, Dean of St. Mary's University School of Law, as its expert witness, counsel for Helping Hands asked to approach the bench outside the presence of the jury and objected to the Dean's testimony. The trial court allowed the Dean to testify but only as a fact witness.

After giving the jury a brief background of her educational achievements, Aldave was permitted to explain, over Helping Hands' objection, that in the previous twenty-nine years of her legal career, she had kept abreast of libel law in the course of her teaching, had been retained as expert witness in cases involving libel and slander, and was then a defendant in a libel action. Thereupon followed a discussion about the witness' fee arrangement. An objection was lodged to this area of examination, and the trial court sustained the objection.

---

3. Although we do not address this point of error, we believe some clarification is required based on our prior opinion in light of the arguments raised in United Way's Motion for Rehearing. In its second point of error, United Way sought to attack the legal and factual sufficiency of the evidence to support the damage award. In its brief, however, United Way conceded there was some evidence to support the damage award by acknowledging that the record supported a damage award of $11,885.00. Therefore, United Way's legal sufficiency challenge to the damage award would fail by its own concession. The proper standard of reviewing this point of error may have been confused by the manner in which United Way couched its point of error in terms of a no evidence review of the damages awarded in excess of $11,885.00.

4. *See Collins v. Collins*, 904 S.W.2d 792 (Tex.App.—Houston [1st Dist.] 1995), *writ denied*, 923 S.W.2d 569 (1996); *Farm Serv., Inc. v. Gonzales*, 756 S.W.2d 747, 750 (Tex.App.—Corpus Christi 1988, writ denied).

Aldave then acknowledged that she reviewed the fact sheet United Way prepared prior to defunding, and she expressed her opinion that the language of the fact sheet was not defamatory because "corporations are not potential subjects of defamation." Helping Hands objected that Aldave was testifying regarding a matter of law. The trial court stated that the questioning could proceed on fact questions. Helping Hands requested an instruction that the jury disregard the witness' response to the legal question. The trial court stated that it would give the jurors the legal instructions necessary when it came to the charge and told counsel for United Way to proceed.

Counsel for United Way then asked the following:

Q. Do you have an opinion as to whether or not the statements she attributes to Mr. Brown as a quote in the last paragraph on page one of that document [Defendant's Exhibit 2] are defamatory?

A. My opinion is that they are not defamatory.

Q. And, again, Dean, I would ask you why you are of that opinion?

A. I think that any reasonable person would construe this simply to mean that putting people on the payroll would not change the basic character of the foundation, would not transform the foundation into a professional corporation.

█ Under Texas law, a witness may not give legal conclusions or interpret the law to the jury. *Puente v. A.S.I. Signs,* 821 S.W.2d 400, 402 (Tex.App.—Corpus Christi 1991, writ denied). Under the common law, no witness was permitted to render opinions on mixed questions of law and fact. *See* Frederick C. Moss, *Beyond the Fringe: Apocryphal Rules of Evidence in Texas,* 43 BAYLOR L.REV. 701, 751 (1991). The Texas Supreme Court has relaxed that rule to permit expert witnesses to testify regarding such mixed questions when a proper predicate is laid. *See Louder v. De Leon,* 754 S.W.2d 148, 149 (Tex.1988); *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 365 (Tex.1987). Lay or fact witnesses, however, are still subject to the general rule that a witness' testimony must be limited to facts of which the witness has personal knowledge, and a witness must not give a personal opinion or legal conclusion unless he is an expert witness. *See Regal Petroleum Corp. v. McClung,* 608 S.W.2d 276, 278 (Tex. Civ.App.—Dallas 1980, no writ); *Williams v. Hemphill County,* 254 S.W.2d 839, 842 (Tex. Civ.App.—Amarillo 1952, no writ); *see generally* Linda L. Addison, TEXAS CIVIL EVIDENCE 7:34 (Rutter Group, Ltd.1995); *cf. Lum v. State,* 903 S.W.2d 365, 369-70 (Tex. App.—Texarkana 1995, pet. ref'd) (noting rule applicable in criminal case citing 2 Steven Goode, Olin G. Wellborn III & M. Michael Sharlot, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL Sec. 701.2 at 10 (Tex. Practice 1993)).

The trial court in the instant case ruled that Dean Aldave would be permitted to testify as a fact witness. As a fact witness, Dean Aldave is not allowed to give an opinion or testify regarding a legal conclusion. Therefore, Dean Aldave's testimony was impermissible.

█ Nevertheless, in order to preserve the right to complain on appeal about the admission of testimony, Helping Hands was required to specifically object at the time the testimony was offered, with such clarity that the trial court might understand the precise nature of the objection. *See Missouri Pac. R.R. Co. v. Brown,* 862 S.W.2d 636, 638 (Tex. App.—Tyler 1993, writ denied). The crux of Helping Hands' argument before the trial court and the argument made in its cross point is that the Dean was providing expert testimony on a question of law. This objection and argument was sufficient to preserve Helping Hands' complaint that Aldave's testimony was a legal conclusion. Her legal opinions and conclusions were not permissible, and her testimony, taken as a whole, was tantamount to a legal conclusion.

█ In light of Dean Aldave's credentials and the weight likely given her testimony by the jury, we conclude that the admission of her testimony was calculated to cause and probably did cause the rendition of an improper judgment. *See* TEX.R.APP.P. 81(b)(1); *Gee,* 765 S.W.2d at 396. Cross point number two is sustained.

## CONCLUSION

With respect to Helping Hands' disparagement claim, we have held the admission of Dean Aldave's testimony constituted reversible error. The judgment of the trial court as to the disparagement claim is reversed, and the disparagement cause is remanded for new trial. With respect to the breach of contract claim, we reverse the judgment of the trial court and render a judgment in favor of Helping Hands in the amount of $11,885.00.

ANTONIO G. CANTU, Justice (Assigned), dissenting on appellants motion for rehearing.

In my dissent on our original disposition, I wrote solely to express my disagreement with the majority's disposition of Helping Hands' cross point number two because I believed then as I believe now, that the cross point was not properly preserved for review and most assuredly fell short of requiring a reversal. Because I remain convinced that my initial impressions were correct, I shall repeat my remarks. But because United Way has filed a motion for rehearing that has impressed the majority into rewriting its opinion into such a manner as to cause me further concern, I feel constrained to add a few more comments.

United Way has convinced the majority that Helping Hands' claim against United Way was solely for business disparagement and the majority, therefore, reverses on this issue. Nothing could be farther from the truth. In reality Helping Hands alleged separate causes of action in slander, libel and business disparagement. To be sure, some of the allegations consisted of complaints regarding defamatory remarks addressing both

Ruth Mahl, the executive director, and Helping Hands. However, one of the causes of action clearly focused entirely on alleged disparaging statements made about Helping Hands. The majority has failed to recognize the difference and has characterized them all as business disparagement, no doubt because United Way has done so in its motion for rehearing. This approach is incorrect.[1]

On appeal, Helping Hands never complained of error affecting its disparagement claim. All complaints focused on the defamation issues. In fact, none of the objections lodged by Helping Hands at trial ever mentioned business disparagement. In my opinion any claim for disparagement damages died with the jury's "No" answer and was abandoned and waived by Helping Hands in not pursuing it further. We ought not resurrect it now.

Helping Hands' complaint on appeal was "H.H.L.F. and Mahl, therefore, complain by way of cross-point of the trial court's ruling permitting Barbara Aldave, Dean of St. Mary's Law School to provide opinion testimony on the *defamation* issues." Appellees Brief p. 15

There is no doubt in my mind that Helping Hands appreciated the subtle distinctions between libel, slander, and business disparagement, because the causes of action were separately alleged and the trial court's charge submitted each as a separate question.

Question No. 3 inquired:

Did Dick Brown slander Ruth Mahl?

In order to answer "Yes," you must find that Dick Brown made an oral statement to a third party that defamed Ruth Mahl.

A statement "defames" an individual if it tends to so harm the reputation of that

1. In *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 893 (1960), the Supreme Court reaffirmed that a business is not the subject of libel, that the defamation, if any, is of the owner of the business and not of the business itself. ("In each case, recovery of the two elements of damages will be for defamation of the owner, whether the owner be an individual, partnership, or a corporation.")

Texas courts have also recognized the distinction between business disparagement and defamation (libel and slander). Disparagement is said to be any willful and unjustified interference by one party with the business of another which does not go far enough to constitute slander or libel. *See Page v. Layne–Texas Co.*, 258 S.W.2d 366, 369 (Tex.Civ.App.—Galveston 1953, writ dism'd by agr.); *Gulf Atlantic Life Ins. Co. v. Hurlbut*, 696 S.W.2d 83, 96–97 (Tex.App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762, 766 (Tex.1987) (the action for defamation is to protect the personal reputation of the injured party, whereas the action for injurious falsehood or business disparagement is to protect the economic interests of the injured party against pecuniary loss).

individual as to lower them in the estimation of the community or to deter third persons from associating or dealing with them. A statement also "defames" an individual if it tends to prejudice the person spoken of in their business, profession, office, occupation, or employment.

In answering this question, you are only to consider the statements, if any, made by Dick Brown during the November 20, 1991 United Way meeting.

Answer "Yes" or "No."

ANSWER: <u>No</u>

Question No. 6 inquired:

Did United Way libel Ruth Mahl?

In order to answer "Yes," you must find United Way of San Antonio and Bexar County, Inc. defamed Ruth Mahl in written or other graphic form so as to:

(1) injure her in her business, profession, occupation, or employment; or

(2) injure her reputation and thereby expose her to public hatred, contempt, or ridicule, or financial injury; or

(3) impeach her honesty, integrity, virtue, or reputation; or

(4) publish her natural defects and thereby expose her to public hatred, ridicule, or financial injury.

In answering this question, you are only to consider the statements, if any, made by United Way of San Antonio and Bexar County, Inc. in the fact sheet and other written statements.

Answer "Yes" or "No."

ANSWER: <u>No</u>

Question No. 9 inquired:

Did any of those listed below disparage Helping Hands [sic] Lifeline Foundation?

In order to answer "Yes" to this question, you must find that the party listed below published statements about Helping Hands that were false, and that the party listed below knew the falsity or acted with reckless disregard of whether the statement was false, or the party acted with ill will or intended to interfere with the economic interest of Helping Hands in an unprivileged fashion.

Answer "Yes" or "No" for each of those listed below.

a) Dick Brown               <u>No</u>

b) United Way            <u>No</u>

Although I firmly adhere to my previous dissent, I fear the majority aggravates the problem by reversing and remanding on disparagement. If error had been preserved, it would have been on the defamation issues, not on the disparagement issue.

I now reurge that Helping Hands' cross point was not preserved for review by repeating my previous dissent.

In order to properly understand the issue presented to the trial court, it is important to review the precise matter that was before it. Additionally, it is not sufficient that we view the question simply as one of admissibility of evidence, but rather, as one of exercise of broad discretion, because unless we are prepared to hold that the trial court abused its broad sound discretion, we are not compelled to order a reversal and remand.

This is true because to obtain a reversal of a judgment based upon a trial court's decision to admit or exclude evidence, the appellant must show: (1) that the trial court abused its discretion in making the decision; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *see also* Tex.R.Civ.Evid. 103 ("unless a substantial right is affected").

Wide discretion is afforded the trial court in determining whether to admit or exclude expert testimony regarding ultimate fact issues in a case. *Dillard v. Broyles*, 633 S.W.2d 636, 643–44 (Tex.App.—Corpus Christi 1982, ref'd n.r.e.), *cert. denied*, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983). In order that a proper review of the record for abuse of discretion can be made, I reproduce all of the relevant matter developed before the trial court.

The record does not disclose any motion in limine or other pretrial motion calling the trial court's attention to United Way's inten-

tion to offer Dean Aldave's testimony.[2] Nevertheless, immediately prior to United Way calling Aldave as its expert witness, counsel for Helping Hands requested a hearing outside the presence of the jury, in effect, urged an oral motion in limine to address Aldave's proposed testimony.

The following discussion then transpired:

THE COURT: At this time, I understand that you wish to talk to the Court before the jurors come in?

MR. PIPOLY: Yes, Your Honor. Carl Pipoly for Helping Hands Lifeline Foundation and Ruth Mahl, and we are going to lodge a formal objection at this time to the testimony of Barbara Aldave, Dean of St. Mary's Law School.

She has been listed as—she has been brought here as an expert witness on matters of law. Her only expertise is in the area of law. And I would ask the Court to be cognizant of the law in Texas at this time, and bring the Court's attention to Adams versus Bergel, which is a San Antonio case in 1945, where it is clearly stated that matters of law are not proper subjects of expert opinion.

In this particular case, which has been followed up to the present day, the Court made the point in here that when—and I will read verbatim. The theory is that whenever inferences and conclusions can be drawn by the jury as well as by the witness, the witness is superfluous.

And what counsel on the other side is saying is that they are going to bring this witness up here to testify as to whether or not the language is defamatory. And, further, here an expert's opinion is received because and whenever his skill is greater to the jury—greater than the jury's.

In this matter, Barbara Aldave's skills are not greater than the jury's in determining the meaning of the English language. All jurors can speak the English language. Even if she was a fact witness, all witnesses have testified about the language, and we would object on the ground that the testimony is superfluous, and it's redundant, and it's just going to waste the Court's time.

\*　　\*　　\*　　\*　　\*　　\*

In this particular case, the matter of law is does the language meet the threshold test. The Court has already ruled whether or not the language meets the threshold test.

Other cases in this talk about—and under Rule 704, in here there is a question—and this is the case, the 1992 case, Corpus Christi, Puente versus Saenz. And this had to do with a duty in a negligence case. And they brought in an expert and said that the company owed a duty, a sign company owed a duty to the plaintiff.

And the Court said that whether a duty exists is a question of law for the Court to decide from the facts surrounding the evidence. Expert opinion was not necessary in this case. And, again, it would be superfluous to have an expert opinion there.

Although—and I will read from the headnote in this case, although expert opinion may testify to ultimate issues that are mixed questions of law and fact, experts may not give opinions or state legal conclusions regarding questions of law.

This is clearly a question of law whether or not the threshold test is met. If the Court allows Professor Aldave to testify, Professor Aldave is, obviously,—there is no question about it that she is an expert in law. What other reason would she be up here?

She has no knowledge of any of the facts in this case. She has not been involved in

---

**2.** During the opening statements, counsel for United Way informed the jury, without objection:

In the defamation area though you are going to have a little bit of assistance in that process. Sometimes when you have complex issues in a case a party might retain the services of an expert witness. In the case the defendants are going to have Barbara Aldave, who is the dean of St. Mary's Law School here in San Antonio. I anticipate that she is going to testify, and the evidence is going to show, that none of the statements from the November 20th meeting, none of the items in the fax sheet, and none of the things that were in the newspaper were defamatory.

Although counsel for Helping Hands was aware of United Way's intentions, no objection was lodged until the sixth day of a seven-day trial.

any of the meetings. She has not been involved in any of the meetings to take away the Helping Hands funding. She hasn't been involved in any of the decisions in the fiscal year '90, '91 or '92.

Any of her testimony in this case is absolutely irrelevant and has nothing to do with the issues in the case. And we would very strenuously object, Your Honor. And this case is, again,—I mean, there are numerous. Lopez versus City Towing Associates, another San Antonio case, 1988. When the jury is equally competent to form an opinion regarding the ultimate fact issues, there is no abuse of discretion in the exclusion of the expert's testimony.

Another worker's comp case, an issue of whether employee was fired because he filed a worker's compensation claim was not the type of question for which expert testimony was required. And it was error to admit the testimony of an attorney to that effect.

The cases are legend [sic]. It is error, Your Honor. And I am looking at Story Services versus Ramirez, 1993, Court of Appeals of El Paso. It is error to admit opinion evidence on an issue where no specialized or technical knowledge is necessary.

I would hand these to the Court for review, and ask the Court to consider the law and the state of the law at this time and request that Barbara Aldave not be permitted to testify.

THE COURT: Hold on just a moment.

MR. FORD: Do you need a response? Rule 702 of the Texas—Bill Ford for the defendant.

THE COURT: For the record, we do.

MR. FORD: Rule 702, Texas Rules of Evidence, says, in essence, that an expert can be called to testify at any time if their knowledge will assist the trier of facts to understand the evidence or to determine a fact in issue.

The plaintiffs have opened the door by having numerous people testify as to whether or not the statements allegedly made or the document known in the case as the facts sheet is defamatory. They

have asked every witness they have had up there.

We are entitled to put a witness up in response. As an expert, she can render an opinion as to whether or not that is defamatory. Whether or not that is injurious to one's reputation. It's not a question of law. It's a question of fact. Is it defamatory or is it not? It's the same question they have asked their witnesses, and we are entitled to respond to that.

The Court has made a threshold determination that it may rise to that level, otherwise, the Court would have granted your motion for directed verdict yesterday. So, we are not here talking about law issues. This witness will help the jury understand the factual perception of, is it defamatory, or is it not. Clearly, we are entitled to do so.

It's not superfluous, to use Mr. Pipoly's word, because he has opened the door on all of these questions. As to her knowledge of the facts, she has been provided with the fact sheet, she has been provided with the statements that were made at the November meeting, doesn't have to be in attendance at either one of those to have knowledge of those facts. She is clearly qualified to give an opinion.

THE COURT: It's going to be dependent on how you ask your questions. You may proceed with her. And, more than likely, you will be getting that information from her. But if it goes into too much of something, then I'm probably going to sustain the objection just because he has had some folks testify the opposite way. I just want it to be made clear to the jurors that there are different opinions.

MR. PIPOLY: Well, the key here, Judge, is that we didn't have expert testimony on the meaning of the language. We don't need expert testimony to tell the jury what the meaning of the words are.

THE COURT: She would be testifying as a fact witness.

MR. PIPOLY: But that's my point. She can't testify as a fact witness because she has nothing to do—she is testifying as an expert. They are trying to tell you she

is testifying as a fact witness, but expert witnesses—

THE COURT: Only to counteract that testimony which was said by your witness.

MR. PIPOLY: But she wasn't there. My witnesses were there, my witnesses all had knowledge, my witnesses were fact witnesses. She is not a fact witness, Judge. She's an expert witness.

MR. FORD: The difference and what Mr. Pipoly is not seeing is he asked the witnesses and the Court allowed his witnesses to draw inferences and conclusions as to whether or not those statements were damaging or were defamatory. Those conclusions are exactly the same conclusions and opinion that we are entitled to express in rebuttal.

THE COURT: But you are only going to be able to do it in a limited way.

MR. PIPOLY: I would say extremely limited, Judge.

MR. FORD: We are going to be brief.

MR. PIPOLY: What they are doing is they are calling an expert, clearly they are calling an expert to rule on fact issues. Every one of my witnesses were involved in the operations, every one of my witnesses that talked about the fact sheet was involved in every single thing that was in that fact sheet and they could say it was false. She was not involved in that fact sheet. She doesn't know when it came out, she had nothing to do with it. She is not an expert witness.

THE COURT: You are going to get to do that on cross examination.

MR. PIPOLY: I would hate to do that to the professor, I really would. I have got to represent my client.

\*     \*     \*     \*     \*     \*

The witness Aldave was then called to testify before the jury.

After giving the jury a brief background of her educational achievements, Aldave was asked about the length of her legal career and the following transpired:

[Aldave] A. About 29 years now, I believe.

Q. All right. And within those 29 years, have you had any focus or emphasis on areas of law that would pertain to libel or slander?

A. I have.

MR. PIPOLY: Your Honor, I'm going to object at this point. We have talked about this, the witness is only here as a fact witness and not an expert, and I believe going into all her legal background— this jury does not need to be told what words mean. They understand the English language. We don't need a legal expert to talk about facts.

THE COURT: We have covered everything in our previous discussion. You may proceed, but in a limited way.

MR. FORD: We certainly plan to.

Q. Dean Aldave, you can answer the question. And the question to you is: Do you have any particular training or focus dealing in the area of libel or defamation?

MR. PIPOLY: Again, Your Honor, I am going to object.

THE COURT: Overruled.

A. Yes.

Q. Would you tell us what that particular training or emphasis might be?

A. For most of my career, I have taught federal constitutional law. And about six years before I began teaching, the United States Supreme Court began to impose first amendment limits on state defamation law. So, I learned more than I learned in law school about defamation law, in a sense, because of my teaching and research interest in constitutional law.

And then, more recently, I have served as a witness, was retained as a witness, I did not actually testify, in cases involving libel or slander.

Also, I am currently myself a defendant in a libel action, and I have learned a great deal about libel law in general and the scope of privileges, in particular, in the interest of asserting in my own defenses.

Q. Okay. You have been asked by me on behalf of my client, United Way, to render some opinions in this case, is that correct?

A. That is correct.

\* \* \* \* \* \*

Thereupon followed a discussion about the witness' fee arrangement. An objection was lodged to this area of examination and the trial court sustained the objection.

The following then transpired:

Q. Dean Aldave, I have asked you to render opinions on a couple of matters involving defamation. Let me hand you what is marked as Plaintiff's Exhibit 27 and ask you: Have you seen that before? We have provided that to you before, I believe?

A. Yes, I have.

Q. Okay. For the jury's benefit, you have not been here to know this, but we are generally referring to that as the fact sheet. I will tell you, Dean, that that is a sheet that was prepared by United Way six or eight months after the defunding of Helping Hands. Have you had an opportunity prior to today to review that sheet?

A. I have.

Q. In reviewing that sheet, have you formed any opinions as to whether or not there is any language in that sheet that would be considered defamatory?

A. I have formed an opinion.

Q. In reviewing that sheet, have you formed any opinions as to whether or not there is any language in that sheet that would be considered defamatory?

A. I have formed an opinion.

Q. And what is that opinion?

A. I think that the language in this fact sheet is not defamatory.

Q. And what do you base that opinion on?

A. The fact sheet focuses on Helping Hands Lifeline Foundation. I understand that to be a corporation. And the law indicates that corporations are not potential subjects of defamation.

MR. PIPOLY: Your Honor, I have got to object and ask the jury to disregard that last question. Matters of law, testimony on matters of law are clearly improper. And counsel was instructed on that before he began questioning this witness.

THE COURT: On fact questions, you may proceed.

MR. PIPOLY: He just asked the witness a legal question. Can I have an instruction from the Court for the jury to disregard?

THE COURT: The Court will give the jurors the legal instructions necessary when it comes to the charge. You may proceed.

Q. Dean, the second area that I would ask your opinions on deals with comments that were allegedly made at a meeting of November 20th, 1991. And I will represent to you that the testimony has been that those in attendance at the meeting were either representatives of United Way or representatives of Helping Hands.

Now, let me ask you: In your experience as a lawyer, do you have an opinion as to whether or not the statement or recollection of an individual is better closer to the event or further away from the event they are trying to recall?

MR. PIPOLY: I would object again, Your Honor. He is asking for opinions as a lawyer.

THE COURT: Overruled. Let's proceed.

A. In fact, it is my opinion as a lawyer, a dean, and mother, and ordinary person, that recollections are much more accurate shortly after events occur than they are after a substantial passage of time.

Q. Let me hand you what has been marked as Defendant's Exhibit 2, and ask you, have you seen this document before?

A. I have.

Q. Have you had a chance to review that document?

A. I have.

Q. And, for the sake of time, Dean, I think it's the last paragraph there that the plaintiffs are complaining of. Does that document contain quotes allegedly attributed to Dick Brown of United Way?

A. It does.

Q. Is it a reasonable assumption—and let me further represent to you, Dean, that the statement, I believe there is a date on the second page, is June of 1992, which is

approximately six months after the defunding of Helping Hands took place, but prior to the filing of this lawsuit or the retention of counsel by Mrs. Mahl, is it reasonable to assume that the statements contained in Defendant's Exhibit 2 are her best recollection of what occurred?

A. I am confident that they were.

Q. And, again, that's based on your experience in the practice of law, and as a mother, and as a dean?

A. Among other things, yes.

Q. Do you have an opinion as to whether or not the statements she attributes to Mr. Brown as a quote in the last paragraph on page one of that document are defamatory?

A. My opinion is that they are not defamatory.

Q. And, again, Dean, I would ask you why you are of that opinion?

A. I think that any reasonable person would construe this simply to mean that putting people on the payroll would not change the basic character of the foundation, would not transform the foundation into a professional corporation.

Under Texas law, a witness may not give legal conclusions or interpret the law to the jury. *Puente v. A.S.I. Signs,* 821 S.W.2d 400, 402 (Tex.App.—Corpus Christi 1991, writ denied). But since November 23, 1982, when the Rules of Civil Evidence were adopted, Rule 704 has provided that testimony in the form of an opinion or inference, otherwise admissible, is not objectionable because it embraces an ultimate issue to be decided by the jury. An expert may state an opinion on a mixed question of fact and law as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Louder v. DeLeon,* 754 S.W.2d 148, 149 (Tex.1988); *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 365 (Tex. 1987).

Helping Hands does not now complain, nor did it complain at the trial level, that the opinion was not relevant [3], nor that it was not based on proper legal concepts. *See, e.g., E–Z Mart Stores, Inc. v. Terry,* 794 S.W.2d 63, 64–65 (Tex.App.—Texarkana 1990, writ denied); *Harvey v. Culpepper,* 801 S.W.2d 596, 601 (Tex.App.—Corpus Christi 1990, no writ).

The sole complaint by Helping Hands is that Aldave should not have been permitted to provide an expert opinion on the defamation issues because whether a statement is defamatory is solely a question for the trial court.[4]

As stated above, a witness may not give legal conclusions or interpret the law to the jury.[5] *Puente,* 821 S.W.2d at 402. Matters of law must be decided and applied solely by the judge trying the case. *Faulkner v. Thrapp,* 616 S.W.2d 344, 348 (Tex.Civ.App.— Texarkana 1981, writ ref'd n.r.e.) (Cornelius, C.J., concurring).

But it has been recognized that traditional legal concepts, such as negligence and proximate cause, can be mixed questions of law and fact. *Birchfield,* 747 S.W.2d at 365. A mixed question of law and fact exists when an opinion is sought seeking to gauge a person or conduct against a standard or mea-

---

**3.** It did generally complain about relevance at the oral motion in limine, but not otherwise during the testimony.

**4.** On appeal, Helping Hands does not complain that Aldave was permitted to testify, but only that she was allowed to offer a specific opinion. At the trial hearing, an attempt was made to prohibit her testimony altogether.

**5.** Expert testimony on points of law is largely inadmissible because it is not helpful under Rule of Evidence 702 [F.R.E. 702], and abolishing the ultimate issue objection did not create a positive basis for such testimony. MUELLER & KIRKPATRICK MODERN EVIDENCE, § 7.9 (Expert testimony on Law (1995)); WEINSTEIN AND BERGER, WEINSTEIN'S EVIDENCE, United States Rules, Vol. 3, § 704[01], et seq.

There has been a trend to admit some forms of expert testimony on the law. *See Transport Ins. Co. v. Faircloth,* 861 S.W.2d 926, 937–39 (Tex. App.—Beaumont 1993), *rev'd on other grounds,* 898 S.W.2d 269 (Tex.1995) (former Texas Supreme Court Justice allowed to testify on procedures required by law); *see also United States v. Garber,* 607 F.2d 92, 97–98 (5th Cir.1979); *Deere & Co. v. Farmhand, Inc.,* 560 F.Supp. 85, 93 (S.D.Iowa 1982), *aff'd* 721 F.2d 253 (8th Cir. 1983); Baker, *The Impropriety of Expert Testimony On the Law,* 40 U. Kan. L.Rev. 325, 325–26 (1992).

sure fixed by law. *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 134 (Tex. App.—Texarkana 1994, no writ). Thus, to the extent that a witness discusses both the law and its application in the factual context of the case on trial, the testimony involves a mixed question of law and fact. *Id.* at 135.

In the instant case, the trial court was advised by United Way that it would offer Aldave's testimony as it addressed a mixed question of law and fact. Although Helping Hands was given an opportunity to test the anticipated testimony outside the presence of the jury, no attempt was made to offer the trial court any guidance for her ruling. Instead, counsel for Helping Hands merely gave the trial court abstract argument on the law of expert witnesses.

During the course of Aldave's testimony, it became apparent that the proffered testimony was nothing more than an attempt to offer testimony on a pure question of law.[6] When the testimony actually developed in the presence of the jury, Helping Hands was required to make a timely and specific objection to the testimony as deviating from that represented to the trial court at the hearing on Helping Hands' oral limine motion. Moreover, although Helping Hands sought to keep out Aldave's entire testimony by apprising the trial court beforehand, it is noted that none of the objections lodged against the proffered testimony, when it developed, actually addressed the complaint now before this court.

At one point an objection was made as Aldave recounted her professional training. At another time an objection was made to the remark by Aldave that "corporations are not potential subjects of defamation." Further still, another objection was made to a question inquiring into her experience as a lawyer relative to a witness's ability to recall facts. At no time during examination of the witness did counsel for Helping Hands lodge an objection to the questions and answers now forming the basis of its complaint on appeal.[7]

Rule 103, TEX.R.CIV.EVID. provides in relevant part:

Civil Rule 103. Rulings on Evidence.

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. When the court hears objections to *offered evidence* out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.

\*      \*      \*      \*      \*      \*

(c) Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury. (emphasis added.)

Under Rule 103, it is not enough that a party complain about anticipated expert testimony. The party must go further and develop the anticipated testimony before the court, outside the jury's presence, so that the trial court may, with some guidance, gauge

---

6. When expert testimony goes directly to the application of governing law to the facts of the case, it is usually excluded if it seems unhelpful because it amounts to a kind of gratuitous advice telling the jury how to decide the case. *See Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411–12 (8th Cir.1987) (opinion not helpful when it tells what result to reach).

7. If the objections to the evidence presented on appeal are not among those voiced to the trial court, they will not be considered on appeal. *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 459 (Tex.Civ.App.—Dallas 1987, no writ); *Eubanks v. Winn*, 469 S.W.2d 292, 296 (Tex.Civ.App.—Houston [14th Dist.] 1971, ref'd n.r.e.); *Hooten v. Dunbar*, 347 S.W.2d 775, 778 (Tex.Civ.App.—Beaumont 1961, ref'd n.r.e.) (a party must stand or fall on the objection as made in the trial court); *see also United States v. Indiviglio*, 352 F.2d 276, 280 (2d Cir.1965), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); (interpreting Fed.R.Evid. 103, error raised for first time on appeal rejected because of failure to raise the issue by specific objection below).

the evidence and intelligently rule on its admissibility, while exercising its broad sound discretion. In the absence of compliance with this procedure, the complaining party may not rely on its stated objections made out of the presence of the jury but must be ever vigilant and adhere to timely and specific objections when the opportunity demands it. *Waldon v. City of Longview,* 855 S.W.2d 875, 880 (Tex.App.—Tyler 1993, no writ).

In *Texas Commerce Bank v. Lebco Constructors,* 865 S.W.2d 68, 78 (Tex.App.—Corpus Christi 1993, writ denied), it was recognized that a premature objection is insufficient to preserve error, citing *Farm Services, Inc. v. Gonzales,* 756 S.W.2d 747, 750 (Tex.App.—Corpus Christi 1988, writ denied). More specifically, it was therein held that a premature interchange between the judge and attorneys at a pretrial hearing is not sufficient to preserve error concerning rulings to be made at a later time at trial, citing *Barras v. Monsanto Co.,* 831 S.W.2d 859, 864 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Failure to make timely and specific objections results in waiver of the objections. *Clark v. Trailways, Inc.,* 774 S.W.2d 644, 647 (Tex.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990); *Hartford Accident and Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963); *Srite v. Owens–Illinois, Inc.,* 870 S.W.2d 556, 565 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds,* 897 S.W.2d 765; *Texas Commerce Bank,* 865 S.W.2d at 78; *Freedman v. Briarcroft Property Owners, Inc.,* 776 S.W.2d 212, 217 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Line Enterprises, Inc. v. Hooks & Matteson Enter. Inc.,* 659 S.W.2d 113 (Tex.App.—Amarillo 1983, no writ); *Zamora v. Romero,* 581 S.W.2d 742, 747 (Tex. Civ.App.—Corpus Christi 1979, ref'd n.r.e.); *Beken v. Elstner,* 503 S.W.2d 408, 410 (Tex. Civ.App.—Houston [14th Dist.] 1973, no

writ); *Guerra v. Texas Employers Ins. Ass'n,* 343 S.W.2d 306, 308 (Tex.Civ.App.—San Antonio 1961, no writ); *Street v. Masterson,* 277 S.W. 407, 408 (Tex.Civ.App.—San Antonio 1925, writ dism'd).

In order to preserve the right to complain on appeal about the admission of testimony, Helping Hands was required to specifically object at the time the testimony was offered, with such clarity that the trial court might understand the precise nature of the objection.[8] *See Missouri Pac. R. Co. v. Brown,* 862 S.W.2d 636, 638 (Tex.App.—Tyler 1993, writ denied).

In the absence of tendered evidence from which the trial court might intelligently rule on anticipated testimony, there is no conceivable way that the trial court could abuse its discretion in permitting Aldave to testify. The majority opinion has placed an erroneous burden on the trial court to conduct Helping Hands' trial tactics.

The burden was on Helping Hands to develop the transaction and affirmatively show abuse of discretion. In other words, the presumption is that the action of the trial court was just and proper, unless there is some testimony showing to the contrary. *Finley v. Finley,* 410 S.W.2d 818 (Tex.Civ. App.—Tyler 1966, writ ref'd n.r.e.).

In my opinion, Helping Hands did not preserve any complaint it might have had to Aldave's testimony, nor has it discharged its burden of showing a clear abuse of discretion on the part of the trial court. I would overrule Helping Hands' cross point, reform the judgment to award Helping Hands $11,885.00 and otherwise affirm.

## ON APPELLEES' MOTION FOR REHEARING

RICKOFF, Justice.

Appellees' motion for rehearing is granted in part. This opinion supplements our opin-

---

**8.** The rule of evidence is of ancient origin. In *Cady v. Norton,* 31 Mass. (14 Pick.) 236, 237 (1833), Chief Justice Shaw observed:

"[T]he right to except [object] is a privilege, which the party may waive; and if the ground of exception is known and not seasonably taken, by implication of law, it is waived. This proceeds upon two grounds; one, that if the exception is intended to be relied on and is

seasonably taken, the omission may be supplied, or the error corrected, and the rights of all parties saved. The other is, that it is not consistent with the purposes of justice, for a party knowing of a secret defect, to proceed and take his chance for a favorable verdict, with the power and intent to annul it as erroneous and void, if it should be against him." *See also Clark,* 774 S.W.2d at 647.

ion of January 15, 1997. Our judgment of January 15, 1997 is withdrawn, and our judgment of this date is substituted therefor. We grant the motion for rehearing in part to provide for the reversal and remand of Ruth Mahl's defamation claim.

Our opinion of January 15, 1997 (the "Prior Opinion") is incorporated herein by reference and is hereby supplemented as follows.

■ In our Prior Opinion, we refer to cross point number two as Helping Hands' cross point number two, and our judgment reverses the judgment of the trial court as to the disparagement claim, remanding it for new trial. Appellees note in their motion for rehearing that both appellee Helping Hands and appellee Ruth Mahl complained in the cross point of the trial court's ruling permitting Barbara Aldave, Dean of St. Mary's University School of Law, to testify regarding whether certain language was disparaging or defamatory because it was not a proper subject for expert testimony. We agree with appellees that both Helping Hands and Ruth Mahl presented the cross point and that they are both entitled to have their disparagement/defamation claims reversed and remanded for new trial. Therefore, we hereby withdraw our judgment of January 15, 1997 and substitute a new judgment reversing and remanding both Helping Hands' disparagement claim and Ruth Mahl's defamation claim because the trial court erred in allowing Dean Aldave to testify regarding a legal conclusion after it ruled that she would only be permitted to testify as a fact witness.

ANTONIO G. CANTU, Justice (Assigned), dissenting.

I continue to respectfully dissent for the reasons already adequately expressed.

DUNCAN, Justice, dissenting on denial of motion for rehearing en banc.

I respectfully dissent from the majority's denial of rehearing en banc. In a published opinion, the majority has reversed a take-nothing judgment against a party who is neither an appellant nor an appellee—without consideration of, and in direct conflict with, the Supreme Court of Texas' decision in *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772

S.W.2d 442 (Tex.1989). While this may be a "mere procedural error," in the view of some members of the bench and bar, in my view it is one of critical importance and one that demands uniform application in all appeals—particularly all appeals within a single court.

Although the majority cites no cases, it apparently holds that it can reverse the take-nothing judgment against Ruth Mahl in her defamation claim against United Way, because (1) she is an appellee, and (2) Helping Hands sought and was granted a reversal of the judgment against it on its business disparagement claim. If the first ground were true, and Mahl were an appellee, the majority would be correct without regard to the second ground. *See and compare Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 639 (Tex.1989) ("Unless an appellant limits his appeal pursuant to Texas Rule of Appellate Procedure 40(a)(4), an appellee may complain by cross-point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court *as between appellant and appellee*") (emphasis added); *id.* at 640 (Ray, J., concurring) ("the matters presented by the appellee's cross-points must have actually been in controversy in the suit as contested matters *between the appellant and the appellee*") (emphasis added). But, as indicated by the emphasis in the parentheticals, this rule only permits the appellee, Helping Hands, to broaden the scope of the appeal through cross-points. It does not permit Mahl to do so because she is not an appellee, as established by at least three indisputable facts— United Way did not name Mahl in its cost bond or in its brief; it did not seek reversal of the take-nothing judgment against Mahl on her defamation claim; and that claim is separate and distinct from Helping Hands' business disparagement claim. The applicable rule is not that set forth in *Donwerth*, as the majority implicitly holds, but the court's later decision in *Plas–Tex*.

In *Plas–Tex*, Fiberex sued United States Steel, the manufacturer of resin used by Fiberex in its construction of fiberglass pools, and Plas–Tex, the reseller of the resin, because the resin allegedly caused the pools to delaminate. 772 S.W.2d at 443. Plas–Tex

cross-claimed against United States Steel for indemnity for its attorney's fees. *Id.* As to Fiberex's claim against United States Steel, the trial court rendered judgment on the jury's verdict in favor of Fiberex. *Id.* But on Fiberex's claim against Plas–Tex, the trial court rendered a take-nothing judgment, again in accordance with the jury's verdict. *Id.* The trial court also rendered judgment in favor of Plas–Tex on its attorney's fees claim against United States Steel. *Id.* United States Steel appealed, and the court of appeals reversed and remanded the entire cause. *Id.*

Both Fiberex and Plas–Tex filed applications for writ of error. Plas–Tex's application argued that the court of appeals erred in reversing its attorney's fee award and further erred in reversing the take-nothing judgment in its favor on Fiberex's claim against it. *Id.* The supreme court disagreed with Plas–Tex's first point, holding that the court of appeals properly reversed the attorney's fees award because it was dependent upon Fiberex's judgment against United States Steel, which the court agreed must be reversed. *Id.* at 446. However, the supreme court agreed with Plas–Tex on its second point, holding that Plas–Tex fell within the general rule providing that "when one party appeals from a judgment, a reversal as to that party will not justify a reversal as to other nonappealing parties" and outside the exception recognized when "the rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Id.* (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 166 (Tex. 1982)).

In this case, Mahl's defamation claim, just like Fiberex's claim against Plas–Tex, arises out of the same nucleus of facts as Helping Hands' business disparagement claim, but it is not so interwoven with, or dependent upon, Helping Hands' similar claim as to require reversal of the entire judgment. To the contrary, Mahl's defamation claim is completely separate and distinct from Helping Hands' business disparagement claim. The fact that the same evidentiary error may affect both is inconsequential, just as the

errors affecting Fiberex's judgment against United States Steel were immaterial to the unappealed take-nothing judgment on Fiberex's claim against Plas–Tex. I, therefore, would grant rehearing en banc so that the full court may consider and thoughtfully and unequivocally decide this important procedural point in a manner that is both consistent with *Plas–Tex* and dispositive so long as the current rules are operative.

GREEN and ANGELINI, JJ., Join.