**FARM SERVICES, INC., and Jeff Burke, Jr., Appellants,**

v.

**Juan GONZALES, Appellee.**

**No. 13–87–337–CV.**

Court of Appeals of Texas, Corpus Christi.

June 16, 1988.

Rehearing Denied Aug. 31, 1988.

Reagan M. Brown, Fulbright & Jaworski, Houston, Victor M. Carrera, Wood, Boykin, Wolter & Keys, Corpus Christi, John D. Van Kleef, Van Kleef & Robbins, Harlingen, Tom C. Wheat, Alice, for appellants.

Marc A. Zito, Jones & Granger, Beverly J. Moffitt, Houston, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellee, Juan Gonzales, successfully sued appellants, Farm Services, Inc. and Jeff Burke, Jr., for negligence. Gonzales sought recovery for injuries sustained when an airplane piloted by Burke and owned by Farm Services discharged a pesticide on him while he was working on a farm. Pursuant to the jury's verdict, the trial court rendered a joint and several judgment for $275,320.00 in actual damages, plus pre- and post-judgment interest. The court also granted punitive damages for $10,000.00 from Farm Services and $7,000.00 from Burke. Appellants raise issues concerning the sufficiency of the evidence, the admissibility of certain testimony, and the submission of several special issues.

Appellee testified through an interpreter that he was operating a tractor on a farm in Lyford, Texas, on June 15, 1984, when he felt liquid fall on him. He momentarily lost consciousness, apparently from the strong odor. When he came to, he saw an airplane landing on a nearby road about a mile away. He recognized the odor as a poison and tried to wash it off. His boss soon arrived and told him to go shower and change his clothes.

Jeff Burke testified he was flying a Farm Services airplane on the day in question. While en route to crop-dust an orchard, most of the chemical suddenly escaped from the plane. Burke noticed a tractor being operated nearby, but thought the prevailing wind would push the chemical away from it. He quickly landed the aircraft on a nearby road and inspected the sprayer mechanism. He noticed a tube had pulled away from a hose on the sprayer, and he pushed the tube back into the hose. He was then able to fly back to the hangar for repairs.

Roberto Villa, a farm services employee, met with Burke after Burke had landed the plane on the road and largely corroborated Burke's testimony.

Appellee further testified that he had been healthy prior to the incident, but that he developed numerous problems from exposure to the pesticide, methylparathion. He described symptoms of headaches, profuse sweating, excessive salivation, decreased eyesight, problems with his skin and breathing, numbness and weakness, swelling, cramping, muscle trembling, and blood in his urine. After seeing several doctors, some of these problems were partially alleviated.

Appellants' first and fifth points of error both involve discovery questions. Appellants complain in point one that the trial court erred in permitting an expert witness to testify, allegedly because the expert's opinions had changed since her deposition was taken but they had not been apprised

of these changes. They complain in point five that it was reversible error to permit appellee's wife to testify since she was not disclosed as a potential witness in answers to interrogatories.

In a supplemental response to an interrogatory from appellants, appellee identified Dr. Margaret Diaz as one of the two expert witnesses he planned to call at trial. In response to another interrogatory requesting the subject matter, mental impressions and opinions of these experts, appellee merely responded that appellants had previously taken Dr. Diaz's deposition and had a copy of it.

Appellee called Dr. Margaret Diaz as his first witness. Appellants' attorney objected to any testimony she might give beyond those opinions expressed in her deposition. He argued that if she had any opinions different from those expressed in her deposition, appellee was under a duty to inform appellants of those changes in a supplemental answer to interrogatories. By failing to do so, he claimed Dr. Diaz could not testify to opinions differing from those expressed in her deposition. The objection was overruled. Appellants' motion to strike her testimony after she had finished was also overruled.

Appellants continue this reasoning here. They argue that Dr. Diaz's testimony at trial conflicted with her deposition testimony; specifically, they argue that Dr. Diaz said in her deposition that she did not know if appellee's problems stemmed from the chemical drenching he received, whereas at trial after she had conducted more tests, she unequivocally testified it was the cause of his physical complaints. They also complain of other opinions expressed by Dr. Diaz which were not disclosed in her deposition.

The Supreme Court has made it clear that expert witnesses who are not disclosed in response to appropriate discovery requests may not testify at trial, in the absence of a showing of good cause. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex.1986); *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.*, 701 S.W. 2d 243, 246 (Tex.1985); Tex.R.Civ.P.

166b(2), 215(5). Expert opinions are likewise required to be disclosed under Tex.R. Civ.P. 166b(2)(e)(1), in response to an appropriate interrogatory. Therefore, appellants argue, undisclosed expert opinions should likewise be inadmissible at trial. *See City of Denton v. Van Page*, 683 S.W.2d 180, 203–204 (Fort Worth 1985), *rev'd on other grounds*, 701 S.W.2d 831 (Tex.1986).

■ Appellants' argument is convincing; however, they have failed to preserve the errors of which they here complain. Their objection before Dr. Diaz testified was premature and too general to preserve error, and they did not object at trial to the particular errors of which they now complain. They made no appropriate objections to the supposedly impermissible matters as they came in during Dr. Diaz's direct examination. Their motion to strike her testimony regarding appellee's future disability was made at the conclusion of appellee's case, long after the testimony had been admitted without a specific objection. Objections must be timely and specific. *See generally MBank Dallas, N.A. v. Sunbelt Manufacturing, Inc.*, 710 S.W.2d 633, 638 (Tex.App. —Dallas, 1986, writ ref'd n.r.e.). A party is confined to the grounds of objections stated in the trial court. *Perez v. Baker Packers*, 694 S.W.2d 138, 141–42 (Tex.App. —Houston [14th Dist.] 1985, writ ref'd n.r. e.).

■ We disagree with appellants' argument that without Dr. Diaz's testimony, there is no evidence of causation. Appellee's testimony provides strong circumstantial evidence that the massive pesticide exposure to which he was subjected was the cause in fact and proximate cause of his injuries. Appellee, in his late forties, testified that prior to the incident in question, he was in good health and had been a farm worker for the same family for over thirty years. He had never experienced the severe symptoms described earlier until the massive exposure, and he had never used any poison on the farm's crops. Both he and an agricultural expert testified that a large patch of cotton in the area of the discharge had been killed.

In short, even without Dr. Diaz's testimony, there is overwhelming evidence that appellee was drenched by toxic chemicals released by a plane owned by one appellant and flown by another. There is also ample evidence to show that this exposure was the proximate cause of his injuries, despite the medical opinions of appellants' experts. The jury chose to believe appellee. Thus, although Dr. Diaz's testimony was important, its inclusion, even if error, was not so egregious as to cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1). We overrule appellant's first point of error.

Appellants' fifth point of error complains that the testimony of appellee's wife should have been excluded since she was not identified in response to an interrogatory which sought the identities "of all persons having knowledge of relevant facts surrounding the incident of on or about June 15, 1984, which allegedly resulted in the alleged injuries suffered by you and which form the basis for the [lawsuit]."

The trial court overruled appellants' objection, holding that appellee did not have to identify his wife in response because she had no direct knowledge of the occurrence of the exposure itself, but only of appellee's return from work to shower and of his subsequent symptoms.

■ We disagree with the trial court's construction of the interrogatory. The rules of civil procedure should be liberally construed to obtain a fair trial. Tex.R.Civ.P. 1. The purpose of discovery is to obtain the fullest knowledge of issues and facts prior to trial. *Gutierrez v. Dallas Independent School District,* 729 S.W.2d 691, 693 (Tex.1987). This purpose would be frustrated were we to adopt narrow, strained interpretations of interrogatories. We think the interrogatory should be read as asking for the identities of all persons having knowledge of *all* facts concerning the exposure, not just those leading up to the incident. Since she was not disclosed and no good cause for this failure was shown, appellee's wife should not have been permitted to testify. Tex.R.Civ.P. 215(5).

■ However, we disagree with appellants that this error is reversible. Basically, Mrs. Gonzales' testimony simply corroborated her husband's and was not overly significant in terms of the entire trial. At most, it was cumulative of other evidence in the record. Therefore, we cannot say the error caused or probably resulted in an improper judgment as required by Tex.R. App.P. 81(b)(1). Appellants' fifth point of error is overruled.

Along with the standard negligence jury instructions, the trial court included an instruction on *res ipsa loquitur.* Appellants' second point of error avers that the jury instruction on *res ipsa loquitur* was improper since *res ipsa* was not pled, this is not a *res ipsa* case, and it constituted an impermissible comment on the evidence.

■ Although appellee did not specifically plead a cause of action for negligence based on the term *"res ipsa loquitur,"* he did make a general allegation of negligence along with allegations of specific acts of negligence. In such a state of the pleadings, it was not necessary for appellee to specifically plead *res ipsa loquitur.* See *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 254 (Tex.1974); *Conaway v. Roberts,* 725 S.W.2d 377, 378 (Tex.App.—Corpus Christi 1987, writ denied).

■ Additionally, as addressed below in our discussion of appellants' third and fourth points of error, the doctrine of *res ipsa loquitur* did apply in this case. It was certainly not an improper comment on the evidence to instruct the jury that it could consider the doctrine. We overrule point two.

Points of error three and four challenge the legal and factual sufficiency of the evidence to support the jury's negligence findings. Appellants contend that there is no direct evidence of negligence and that the elements of *res ipsa loquitur* are also not satisfied.

When addressing points of error concerning the sufficiency of the evidence, we will apply the standard of review reaffirmed in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–35 (Tex.1986).

A cause of action for negligence exists where a legal duty is owed to another, that duty is breached, and damages proximately result therefrom. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Sometimes, direct evidence of negligence is not needed; in certain types of cases, the circumstances surrounding an accident constitute sufficient circumstantial evidence of the defendant's negligence to support a fact finding of negligence. These cases are those in which the circumstances surrounding the event are such that the mere occurrence of the accident supports the reasonable inference that negligence was involved and that the defendant was the negligent party. Except for the negligence of the defendant, the injury would not have occurred. *See generally Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 250–51 (Tex. 1974). This doctrine has come to be known as *res ipsa loquitur,* "the thing speaks for itself."

The *res ipsa* doctrine is applicable where two factors exist: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex. 1986); *Bell,* 517 S.W.2d at 251. The possibility of other causes does not have to be completely eliminated but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door. *Porterfield,* 719 S.W.2d at 559; *Bell,* 517 S.W.2d at 251; *Conaway v. Roberts,* 725 S.W.2d 377, 378 (Tex.App.—Corpus Christi 1987, no writ).

Appellants argue there is no evidence that the instrumentality—the spray mechanism—was under their management and control since the hose and tube may have separated due to an "unforseeable mechanical failure." They further argue that the defect may have existed in the spray mechanism itself, since the manufacturer's guidelines warn that vibration and other physical phenomena could cause the tube to separate. They cite a pre-*Bell* case, *Le Blanc, Inc. v. Gulf Bitulithic Co.,* 412 S.W.2d 86, 96 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.), for the holding that "[w]here the evidence shows that an accident may have happened as a result of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply."

■ Under any of the above formulations, we find that the jury's negligence findings are sustainable on *res ipsa loquitur* grounds. Certainly, the sudden discharge of a large amount of concentrated, toxic pesticide by a crop-dusting airplane en route to its destination is an event which ordinarily would not occur in the absence of negligence. Just as clearly, the defendants had management and control over the sprayer mechanism, which was mounted in Farm Services' plane, piloted by Burke.

The circumstances surrounding the incident strongly lead to an inference of negligence. Michael J. Wilcox, owner and president of Farm Services, testified that the manufacturer's manual for the airplane in question warned that "high line pressures and water-hammer effects can blow fittings loose" and that it was a good practice to wire the discharge mechanism of the sprayer with stainless steel safety wire. He had never known safety wire to break, and his planes had never had a leak of chemicals before.

Roberto Villa, a laborer for Farm Services, performed minor mechanical work on Farm Services' aircraft. He explained that a safety wire is designed to keep a bolt or nut from coming loose, usually due to vibration. The hose which came loose normally had clamps on either side to prevent it from pulling away from the connecting tube. He stated the clamps were still on the hose when he inspected it shortly after the discharge. Normally, the hose had safety wire on it, and he had never known safety wire to break.

Jeff Burke testified that he performed minor maintenance on the plane and had been a pilot since 1968, with over 3,000 flight hours in similar planes. He habitual-

ly performed a daily pre-flight, walk-around inspection of the plane he would fly, which included inspection of the spray mechanism. He made a visual inspection of the spray portion of the plane on the day in question, and thought he had grasped and shook "everything" in the spray portion, although he could not specifically recall doing so on that day.

Even if the jury believed all of this testimony, the jury could reasonably infer that Burke and Farm Services were negligent in their inspection and maintenance of the sprayer. The jury could have inferred that the safety wire was not on the appropriate fittings or that the clamps holding the tube and hose together were loose. There was no evidence of an "unforeseeable mechanical failure" or a design defect, as appellants suggest, but rather a strong probability that Burke and other servants of Farm Services negligently failed to properly maintain the sprayer.

*Res ipsa loquitur* was established. The testimony of appellee's witnesses provided ample evidence of actual and proximate cause and damages, satisfying the remaining elements of a negligence cause of action. We overrule points of error three and four.

Points of error six through eleven involve whether strict liability attaches to crop dusting as an abnormally dangerous activity. These points of error are not controlling and are not addressed. Tex.R. App.P. 90(a).

Points twelve and thirteen aver that there is no evidence or insufficient evidence to support the jury's answer to special issues two and four, which found that the appellants' actions were a "heedless and reckless disregard of" the rights of others. These answers refer to the jury's award of exemplary damages of $17,000.00, which requires a showing of gross negligence—that appellants were consciously indifferent to appellee's rights, welfare and safety, or that they knew of the peril but by their acts or omission showed they did not care. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). This is both an objective and subjective test. *Williams v.*

*Steves Industries, Inc.*, 699 S.W.2d 570, 573 (Tex.1985). In reviewing the evidence on this point, we must look at all the surrounding circumstances and view the evidence in the light most favorable to the verdict. *Walls*, 616 S.W.2d at 922.

In addition to the evidence recounted above, other evidence also supports the jury's finding of gross negligence (heedless and reckless disregard for the rights of others). Burke testified that vibrations can cause parts to loosen; he did not see any safety wire on the hose/tube connection after the incident but would have noticed if it was missing when he did his walk-around pre-flight inspection; he was not positive he had performed a pre-flight inspection on the day in question but had very likely done so; and he didn't recall if clamps were still on the hose after the incident.

Michael Wilcox, owner and president of Farm Services, testified that neither of his two regular mechanics were licensed aircraft mechanics and that the manual for his airplanes suggested that safety wire should be used to prevent the type of accident which occurred; that the plane had undergone its annual inspection just a few weeks previously; that they had never had a leak in the spray system before; and that he had never known safety wire to break. The evidence also established that the pesticide carried by the plane was highly toxic.

Conduct showing gross negligence can be active or passive in nature. *Walls*, 616 S.W.2d at 922. The evidence showed that the plane carried a large amount of highly toxic chemical which appellants knew could have been suddenly discharged during normal operating procedures due to vibrations or other natural causes. Of course, they could also expect that people would be present in the fields and farmland over which they flew to get to the treatment area. The jury could easily infer that the simple presence of a safety wire or secure clamps probably would have prevented the mishap, and that the appellants knew of the potential danger to others but simply ignored it. We overrule these points of error.

**754**

Points of error fourteen and fifteen complain of the sufficiency of the evidence to support the jury's answer to special issue 8(d), wherein the jury awarded $204,480.00 for the loss of appellee's future earning capacity, and also request a remittitur.

Appellee testified that he was earning $4.25 per hour at the time of the incident and earned about $160.00 to $180.00 per week, depending on the amount of work needing to be done, plus a $2,000.00 yearly bonus. He often worked overtime and received irregular, smaller bonuses as compensation. Incomplete payroll records introduced by appellants largely corroborated this testimony, showing appellant worked irregular hours and received weekly checks ranging from $100 to more than $200, plus bonus money. He appeared to be earning $10,000 to $11,000 per year at the time of the incident. He had always done farm work. The Court took judicial notice that a 47-year-old man has a life expectancy of 27.7 years. Dr. Margaret Diaz testified appellee could no longer do farm work.

The proper standard of review for actual damages, such as a future lost earnings award, is factual sufficiency of the evidence. *Larson v. Cactus Utility Co.,* 730 S.W.2d 640 (Tex.1987).

 There is sufficient evidence, as outlined above, to sustain an award of actual damages for future lost earnings. See *Funk Farms, Inc. v. Montoya,* 736 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), in which we upheld such an award based on similar facts.

■ Moreover, we do not find the damage award excessive. Appellants cite *Funk Farms,* in which we upheld a loss of future earnings award of $125,000.00 in a similar farm injury case, as a standard to follow here. However, the higher award granted appellee is not rendered invalid based on *Funk Farms.* Our analysis must turn on the facts of this case, not on what a different jury did in a different case. *See Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297, 312-13 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.) (award of $273,000 for loss of future earn-

ing capacity of house cleaner held not excessive), *disapproved of on other grounds, Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986).

As in *Funk Farms,* the jury knew appellee's income at the time of the incident and knew his life expectancy, and could calculate his probable future income but for his injury. The trial court did not err in not granting a remittitur. We overrule appellants' last two points of error.

The judgment of the trial court is AFFIRMED.